HENRY McGEE, complainant-respondent,

*v.*

MARY J. McGEE et al., defendants-appellants.

[Submitted July 8th, 1912.   Decided March 3d, 1913.]

Where a husband procures real estate to be conveyed to his wife, he paying the consideration, a presumption arises that he intended to settle the property on her, and while such presumption may be rebutted, the proof offered to accomplish it must be certain, definite, reliable and convincing, leaving no reasonable doubt of the intention of the parties.

---

On appeal from a decree of the court of chancery advised by Vice-Chancellor Leaming, whose opinion is reported in *78 N. J. Eq. (8 Buch.) 430.*

*Mr. H. Starr Giddings* and *Mr. William J. Kraft,* for the appellants.

*Messrs. Gaskill & Gaskill* and *Mr. James F. Campbell* (of the Philadelphia bar), for the respondent.

The opinion of the court was delivered by

BERGEN, J.

The bill in this case was filed by complainant against his insane wife, and the prayer is that certain real estate held by the wife by virtue of duly executed conveyances be decreed to have been conveyed to her in trust for the complainant, and that it be conveyed to him, or the conveyances reformed by striking out her name as grantee and inserting that of complainant in its stead. The learned vice-chancellor determined that the land had been purchased with the money of the complainant given by him to his wife to hold as trustee for him, and that while the title to the land was vested in his wife with the complainant's knowledge and by his direction, it was upon a trust to hold it for him and that there was no intention on his part to make a gift to his wife.

Based upon these conclusions a decree granting the relief prayed for was advised, and it was adjudged that the wife held the land as trustee for complainant; that the deed to her be reformed by inserting complainant's name as grantee in the place of the wife, and that complainant have the quiet possession of, and income from, the property, and this decree is challenged by this appeal.

A considerable portion of the testimony, as well as the arguments advanced in support of the decree relate to the question whether the money used to purchase the disputed property was earned by the complainant and turned over to his wife to be held by her as his money, subject to his disposition and control. But in applying the principles which we think must control the disposition of the case, it may be assumed that until the land was conveyed to the wife the funds remained subject to the control and under the dominion of the complainant, the wife being a mere depository.

It is not denied that the land was conveyed to the wife, with the husband's consent and by his direction, by two deeds made by different grantors, and in his bill of complaint he admits that he procured it to be done, nor is there any proof of fraud or connivance on the part of the wife, and therefore an intention on

the part of the husband to make a settlement on his wife would exist as a legal presumption from his conduct in procuring the conveyances to be made to his wife, if nothing to the contrary appeared.

While it is true that lands purchased with the money of one, but conveyed to another, who is a stranger, are impressed with a trust in favor of the party who pays the consideration money, the rule is otherwise where the conveyance is made to the wife, for in such case the presumption arising therefrom is that a settlement has been made on the wife. *Duvale* v. *Duvale, 56 N. J. Eq.* (*11 Dick.*) *375, 383,* and cases there cited. In the present case, the vesting of the title in the wife having raised the presumption that complainant intended to confer on his wife a gift or settlement, it becomes necessary to determine whether this presumption has been rebutted or overcome by proof of facts showing it was the intention of the parties to create a trust in favor of the husband, as insisted by the complainant, and none appearing in the deeds or by any other declaration in writing, the complainant is required to rest upon oral proof.

It is not disputed that the property involved was conveyed to the wife by separate deeds, one delivered in 1893, and the other in 1894, or that, since 1895 until the present, the wife has been confined in a hospital for the insane, excepting about two months in 1896 when she was sent home to be delivered of a child.

The complainant sought to establish the alleged trust through admissions made by the wife between 1893 and 1895, and for this purpose called his daughter, Mary I. McGee, who testified that she had heard her mother say that the properties "were papa's." She testified to other admissions by her mother not giving the precise language, but her remembrance of the substance of what her mother said.

Another witness, Mary F. Keariens, testified that she heard Mrs. McGee, in speaking of these lots, say "that they had got a property, and they had bought some lots," and when asked why Mrs. McGee talked to her about the property, she said, "Well she was just so proud to think what a good husband she had that he made this money and bought *her* these properties."

Another witness, John Small, testified that Mrs. McGee told

him that she was buying property in Atlantic City and taking a deed "jointly, in her husband's name and her own." This he testified she told him seven or eight years before she was sent to the insane asylum. As this happened about two years after the deeds were delivered, this witness could not have referred to the property in controversy, or his recollection was not accurate. It will be observed that none of these witnesses fix the time of these statements by Mrs. McGee with any certainty, and it is impossible to say when they were made with reference to the conveyances, and therefore the proof does not .meet the standard required to rebut the presumption of a gift or settlement in the case of a wife which "must be of facts antecedent to or contemporaneous with the·purchase, or else immediately afterwards, so as to be in fact, part of the same transaction" (*Read* v. *Huff, 40 N. J. Eq. (13 Stew.) 229*), and in this connection it must be borne in mind that the bill in this case was filed in 1909, and these witnesses were testifying subsequently, to desultory conversations which happened at least fifteen years prior, and if accepted as true, are not sufficiently clear and cogent to overthrow the presumption of a settlement arising from the deeds which have, so far as it appears, stood unchallenged for at least seventeen years.

The defendant also produced as a witness Mr. Bruckmann, the agent of the vendor of the property conveyed in 1893, and while he testified that when the first payment was made on account of the purchase price by Mrs. McGee the receipt was made out to the husband, he also said that when the deed was to be prepared the complainant said, "You had better make that deed out in my wife's name," to which the wife assented. We find nothing in this act of the parties from which a resulting trust can be raised; on the contrary it is quite consistent with an intention to make a settlement on the wife. In support of the presumption, arising from the deeds, that a settlement was intended, and in addition to the fact that no contrary intention is expressed in the deeds and that no attempt was made by the complainant to have a trust in his favor declared during the two years that his wife was sane after the conveyances, or during the years that have since elapsed, a period altogether of about seven-

13

teen years, we have the circumstance that at the June term, 1909, of the court of common pleas of the county of Philadelphia, in the State of Pennsylvania, the grantor filed a petition, duly verified by his oath, praying that he be appointed committee of the person of his lunatic wife and of her property within the jurisdiction of that court, in the place of West End Trust Company, which had acted as such committee from October 13th, 1902, and then desired to be relieved. This petition, among other matters, after setting out that his wife was seized of property in the city of Philadelphia, assessed for $33,300, subject to mortgages amounting to $14,500, continued as follows: "Fourth—That the said lunatic, Mary J. McGee, is also seized of the following real estate situated at Atlantic City, State of New Jersey, and assessed in the aggregate of $18,500," and then follows a list of her real estate in which is included the property in dispute showing that in 1909 the complainant treated this property as belonging to his wife's estate, of which he was seeking to be appointed a committee in lunacy; and it further appears by complainant's bill that since his wife was adjudged a lunatic in 1902, the property, and income therefrom, has been administered by a committee in lunacy as the estate of his wife, without any assertion or claim by him that he was entitled to it, and when, after seventeen years of acquiescence, he now undertakes to rebut the presumption arising from his conduct, the proofs should be convincing, and dispel all doubt.

The rule in this state is well settled that where a husband procures real estate to be conveyed to his wife, he paying the consideration, a presumption arises that he intends to settle the property on her, and while such presumption may be rebutted, the proof offered to accomplish it must be certain, definite, reliable and convincing, leaving no reasonable doubt of the intention of the parties. *Midmer* v. *Midmer's Executors, 26 N. J. Eq. (11 C. E. Gr.) 299; S. C., 27 N. J. Eq. (12 C. E. Gr.) 548; Lister* v. *Lister, 35 N. J. Eq. (8 Stew.) 49; Beck* v. *Beck, 78 N. J. Eq. (8 Buch.) 544; Read* v. *Huff, supra; Duvale* v. *Duvale, supra.*

The legal presumption that settlement on his wife was intended by the husband, which arises from the conveyances to her,

has not been met by the proof made by the complainant in this cause; on the contrary it falls much below the measure required in such cases.

The decree below is reversed, with costs, and the record remanded to the court of chancery in order that the bill of complaint be dismissed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, BERGEN, MINTURN, KALISCH, BOGERT, VREDENBURGH, CONGDON, WHITE, TREACY—13.